UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DIANE B.,[1]

                    Plaintiff,

        v.

KILOLO KIJAKAZI,

                    Defendant.

Case No.  21-cv-00794-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 22, 25

## I.    INTRODUCTION

Plaintiff Diane B. moves for summary judgment to reverse the decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, partially denying her claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 22.  Defendant cross-moves to affirm.  ECF No. 25.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion for the following reasons.[2]

## II.    PROCEDURAL HISTORY

On September 18, 2015, Plaintiff filed an application for Social Security Disability Insurance and Supplemental Security Income benefits, alleging disability beginning on April 1, 2012.  AR 314-26.  The application was initially denied on November 24, 2015, and again on

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 9, 11.

United States District Court
Northern District of California

reconsideration on March 11, 2016.  AR 190-204, 224-28.  An Administrative Law Judge ("ALJ") held a hearing on February 27, 2018 and issued an unfavorable decision on May 14, 2018.  AR 13-27.  The Appeals Council denied Plaintiff's request for review on December 17, 2018.  AR 1-6.

On April 1, 2019, Plaintiff sought review of the Agency's decision with the United States District Court for the Central District of California pursuant to 42 U.S.C. § 405(g).  AR 1158.  On October 8, 2019, pursuant to a stipulation between the parties, Magistrate Judge Gail Standish remanded the case for further proceedings.  AR 1169-74.  Judge Standish ordered the Appeals Council to instruct the ALJ to reassess and explain the weight given to the medical opinion evidence, reevaluate Plaintiff's residual functional capacity, re-evaluate whether Plaintiff can return to past relevant work or perform other work in the national economy, and take any further action needed to complete the administrative records.  AR 1172-73.

The Appeals Council added further detail to the remand order and directed the ALJ to address the opinion of consultative examiner Kara Cross Ph.D., that Plaintiff would have moderate limitations in performing simple one-or-two step job instructions over an eight hour a day and 40-hour a workweek without decompensating.  AR 1177.  The Appeals Council also directed the ALJ to reassess whether Plaintiff participated in substantial gainful activity in her past job as a Home Healthcare Adviser.  AR 1178.  On November 24, 2020, a new ALJ held a new hearing.  AR 1050-1125.  On November 30, 2020, the ALJ issued a partially favorable decision finding Plaintiff disabled as of January 1, 2018, but not before.  AR 1054-71.

On February 1, 2021, Plaintiff filed the present complaint pursuant to 42 U.S.C. § 405(g).

### III.   ISSUES FOR REVIEW

Plaintiff raises four issues on appeal: (1) the ALJ's physical residual functional capacity assessment is without the support of substantial evidence; (2) the ALJ erred in rejecting the opinions of treating and examining doctors; (3) the ALJ failed to satisfy her burden at step five of the analysis to prove that she can perform a significant number of other jobs in the national economy; and (4) the ALJ failed to provide clear and convincing reasons to reject her subjective limitations.

## IV.    STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (simplified). It means "more than a mere scintilla, but less than a preponderance" of the evidence. *Garrison*, 759 F.3d at 1009 (citation omitted).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court may not substitute its own judgment for that of the ALJ." *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* at 1115 (simplified). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492. The Court is "constrained to review the reasons the ALJ asserts." *Id.* (simplified).

## V.    DISCUSSION

### A.    Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the

United States District Court
Northern District of California

3

1    claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of

2    any medically determinable physical or mental impairment which can be expected to result in

3    death or which has lasted or can be expected to last for a continuous period of not less than 12

4    months." 42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be severe

5    enough that the claimant is unable to perform previous work and cannot, based on age, education,

6    and work experience "engage in any other kind of substantial gainful work which exists in the

7    national economy." *Id.* § 423(d)(2)(A).

8        The regulations promulgated by the Commissioner of Social Security provide for a five-

9    step sequential analysis to determine whether a Social Security claimant is disabled.  20 C.F.R. §

10   404.1520.  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950

11   F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

12       At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

13   gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that

14   involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and

15   citation omitted).  Here, the ALJ determined Plaintiff had not performed substantial gainful

16   activity since April 1, 2012.  AR 1058.

17       At step two, the ALJ decides whether the claimant's impairment or combination of

18   impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

19   claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

20   (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

21   20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

22   impairments: fibromyalgia; chronic fatigue syndrome; major depressive disorder; panic disorder

23   without agoraphobia; bipolar disorder; posttraumatic stress disorder; psychotic disorder not

24   otherwise specified; somatization disorder; and personality disorder.  AR 1058.

25       At step three, the ALJ evaluates whether the claimant has an impairment or combination of

26   impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

27   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

28   describe impairments that are considered "to be severe enough to prevent an individual from doing

United States District Court
Northern District of California

4

any gainful activity." *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings.  AR 1059.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [claimant] to learn to do it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ determined that, prior to January 1, 2018, Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) consisting of the ability to lift, carry, push or pull up to 50 pounds occasionally and 25 pounds frequently; stand and walk 6 out of 8 hours a day; sit 6 out of 8 hours a day; frequently climb ramps, stairs, stoop, kneel, crouch, and crawl; frequently handle and finger with the upper extremities; tolerate no more than occasional exposure to gases, fumes, odors, dusts, poor ventilation, or chemicals; do work that excludes climbing ladders, ropes, and scaffolds, more than occasional exposure to extreme cold and vibrations, exposure to dangerous moving machinery or unprotected heights. The claimant can perform simple work tasks involving occasional and superficial contact with coworkers and public, and do no assembly line or production paced work.

AR 1061.  The ALJ determined that, beginning January 1, 2018, Plaintiff has the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) consisting of the ability to lift, carry, push or pull up to 50 pounds occasionally and 25 pounds frequently; stand and walk 6 out of 8 hours a day; sit 6 out of 8 hours a day; frequently climb ramps, stairs, stoop, kneel, crouch, and crawl; frequently handle and finger

United States District Court
Northern District of California

> with the upper extremities; tolerate no more than occasional exposure to gases, fumes, odors, dusts, poor ventilation, or chemicals; do work that excludes climbing ladders, ropes, and scaffolds, more than occasional exposure to extreme cold and vibrations, exposure to dangerous moving machinery or unprotected heights. The claimant can perform simple work tasks involving occasional and superficial contact with coworkers and public, do no assembly line or production paced work, and would be off task for 20% of the workday.

AR 1066.  Based on these RFCs, the ALJ determined Plaintiff could not perform past relevant work.  AR 1068.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).  "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."  20 C.F.R. § 404.1560(b)(2).  An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[4]  *Id.*  Here, the ALJ determined that, prior to January 1, 2018, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including Grocery Store Bagger, Automobile Detailer, and Hospital Food Service

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant."  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett*, 180 F.3d at 1101).  They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability.  *Id.*  "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements."  *Id.*

[4] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles."  *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

United States District Court
Northern District of California

1    Worker.  AR 1069-70.  However, beginning on January 1, 2018, the ALJ determined there are no

2    jobs that exist in significant numbers in the national economy that Plaintiff can perform.  AR

3    1070.

4    **B.      Physical Residual Functional Capacity**

5            As detailed above, the ALJ determined Plaintiff could perform a range of simple, medium

6    exertional work prior to 2018.  AR 1066.  However, the ALJ found Plaintiff's "severe"[5] mental

7    impairments worsened as of January 1, 2018, causing her to become 20% off task (which was

8    deemed to be disabling) when combined with her prior assessed limitations, including her ability

9    to "perform simple work tasks involving occasional and superficial contact with coworkers and

10   public, and do no assembly line or production paced work."  AR 1066-68, 1070.  The parties do

11   not dispute the ALJ's finding regarding Plaintiff's status beginning on January 1, 2018.  However,

12   Plaintiff argues the ALJ's pre-2018 physical RFC is not supported by substantial evidence.  Pl.'s

13   Mot. at 6.

14           RFC is the most a claimant can do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  It

15   is assessed by considering all the relevant evidence in a claimant's case record.  *Id.*; *see also*

16   *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When a case is before an ALJ, it is the ALJ's

17   responsibility to assess a claimant's RFC.  20 C.F.R. § 404.1546(c); *see also Vertigan v. Halter*,

18   260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the

19   claimant's physician, to determine residual functional capacity.").  "Generally, the more consistent

20   an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion."  20

21   C.F.R. § 416.927(c)(4).

22           Plaintiff raises several arguments regarding the RFC assessment.

23   **1.      Dr. Girgis**

24           Plaintiff first notes the ALJ cites exhibit 1F/2-4, which is a consultative examination that

25   took place on August 19, 2014, and was from a previous benefits application filed on May 12,

26   _____

27   [5] "Severe" within the meaning of the regulations is indicative of a condition that causes more than
     a slight abnormality and has some impact on one's ability to work.  *See* 20 C.F.R. § 404.1522
28   (defining a "nonsevere" condition); SSR 85-28, 1985 WL 56856; SSR 16-3p, 2016 WL 1119029.
     This is a "de minimis screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.

United States District Court
Northern District of California

2014.  AR 143-66, 561.  Plaintiff notes the consultative examiner, Bahaa Girgis, M.D., considered only knee pain and vertigo, without evaluating her fibromyalgia, multiple chemical sensitivity diagnosis, chronic fatigue syndrome, and osteoporosis.  AR 560.  However, the ALJ did not simply adopt Dr. Girgis's findings as the RFC but instead considered Plaintiff's objective medical findings, treatment course, and reported daily activities.  AR 1066.  The Court also notes that Dr. Girgis conducted Plaintiff's physical examination in 2014, two years after the alleged disability onset date, and opined that she had the ability to perform a range of work at the medium exertional level.  AR 556-61; *see* 20 C.F.R. § 404.1567 (defining the physical requirements of the various exertional levels).  Further, while this opinion supported the ALJ's RFC findings, the ALJ assessed Plaintiff with greater limitations than those assessed by Dr. Girgis.  AR 1063-64.  Accordingly, the Court finds the ALJ did not err in considering Dr. Girgis's opinion.

### 2.    Multiple Chemical Sensitivity Syndrome

Next, Plaintiff argues her multiple chemical sensitivity syndrome[6] was neither appropriately assessed by the ALJ nor properly accounted for in her physical RFC.  Pl.'s Mot. at 7-9.  Plaintiff notes the ALJ found she could have occasional exposure to gases, fumes, odors, chemicals, poor ventilation and dust, AR 1066, but did not cite to a medical opinion to support this finding.  In contrast, she argues the record shows she "has trouble with all exposure to fumes, dusts, perfumes, household cleaners, etc., due to multiple chemical sensitive syndrome," and "that even a moderate exposure to dust and fumes could trigger a chemical sensitivity reaction from [Plaintiff] where she would have to leave the worksite."  Pl.'s Mot. at 7-8.

In determining a claimant's RFC, an ALJ must account for medical opinions where a claimant has been diagnosed with multiple chemical sensitivity.  *See Bridges v. Colvin*, 2016 WL 7167870, at *5 (C.D. Cal. Dec. 8, 2016); *Joost v. Colvin*, 2016 WL 3865924, at *3-4 (W.D. Wash. July 12, 2016).  However, the record contains no objective evidence from an acceptable medical

---

[6] Multiple chemical sensitivity is "a symptom array of variable presentation attributed to recurrent exposure to known environmental chemicals at dosages generally below levels established as harmful; complaints involve multiple organ systems."  Stedmans Medical Dictionary, 809520 multiple chemical sensitivity.

source establishing that Plaintiff suffers from multiple chemical sensitivity as a medically

determinable impairment.  In support of her argument, Plaintiff cites to progress notes from Sheri

Wen Hsu, M.D., in which Plaintiff reported chemical sensitivity that started in the 1990s and

sensitivity to environmental antigens and household chemicals.  AR 619, 625.  However, these are

subjective complaints and do not constitute objective medical findings.  Under the regulations,

Plaintiff's "statement of symptoms, a diagnosis, or a medical opinion," alone, may not be used "to

establish the existence of an impairment(s)."  20 C.F.R. § 404.1521 ("[A] physical or mental

impairment must be established by objective medical evidence from an acceptable medical

source").  Dr. Hsu's records note Plaintiff's hand and finger issues due to osteoarthritis, but

otherwise document completely normal musculoskeletal and neurological examination findings.

AR 621, 626.  Dr. Hsu also noted that Plaintiff's "pain is also related to an underlying mood

disorder" and suggested that she "would benefit from seeing mental health" care.  AR 627.

Plaintiff also cites to a progress note dated July 10, 2017, which is mostly illegible but seems to

indicate she suffers from allergies to chemicals, perfumes, and cleaning supplies.[7]  AR 863.  None

of these citations establish multiple chemical sensitivity as a medically determinable impairment.

Further, contrary to Plaintiff's contentions, the ALJ did not simply ignore her allegations; rather,

the ALJ found her "allergies" were "non-severe because the objective medical evidence

establishes only a slight abnormality or a combination of slight abnormalities that would have no

more than minimal limitation on the ability to work for 12 consecutive months relative to this

decision."  AR 1058.

        In reviewing the record, the Court finds it offers broad support for the ALJ's finding.

Plaintiff reported her allergy issues began in 1997, at which time she had a "very confined life,"

but after receiving successful treatment she could "tolerate light perfumes and move[] around

without wearing respirator and gloves."  AR 625, 990.  In October 2014, Plaintiff informed her

provider that she remained "allergic to all chemicals" and she complained of a reaction to her

---

[7] Plaintiff cites AR 863 without explaining its contents.  Further, although the Court directed the
parties to file statements that set forth each fact from the AR on which they rely in support of their
motions, ECF No. 14, Plaintiff does not include AR 863 in her separate statement, ECF No. 23.

United States District Court
Northern District of California

tetanus vaccination.  AR 598.  However, during 20 minutes of observation following the injection, Plaintiff showed "no visible signs of reaction" and her oxygen intake (SpO2) remained at 98% on room air.  *Id.*  Plaintiff then announced that she was "good to go," and was feeling "fine" without any "reactivity."  *Id.*  After Plaintiff was referred to specialists for allergy testing and behavioral health (AR 595, 589), March 2015 test results revealed no more than a medium reaction to the allergens assessed.  AR 573-79.  In December 2017 Plaintiff appeared at her provider with complaints of sneezing and a runny nose, after sharing a sleeping space with a cat at her friend's house.  AR 990.  Although she reported having nasal congestion, postnasal drip, and sinus pressure during the past few years, her "history of multiple chemical, food and drug allergies" was deemed "better now."  AR 990-91.  Her current allergic conjunctivitis was "not significant enough at this time to warrant treatment," but allergy testing was scheduled.  AR 991.  Plaintiff's "skin test was negative for aeroallergens" (airborne substances or inhalants).  AR 987-89.  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2).

In addition to the objective medical evidence, Plaintiff's reported activities provided further support for finding her allergies "nonsevere."  For example, Plaintiff alleged an inability to be around almost all household cleaners, such as Windex or Bleach (AR 53-54; Pl.'s Mot. at 8), yet she testified that she was responsible for keeping the laundry room and property tidy, including dusting off the patio furniture, at the apartments she managed (AR 50-51, 481), and that she was a housekeeper in exchange for rooming for more than a year (AR 45, 69-72).  The record also reflects that Plaintiff performed housekeeper work for a small resort with five guest rooms from August 2014 to December 2015, (AR 409, 439, 444, 481, 1376) and acted as an apartment manager with some cleaning responsibilities from December 22, 2015 through July 2019 (AR 48-51, 1376, 1099, 1102).  An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms."  *Molina*, 674 F.3d at 1113.

In sum, while Plaintiff relies on her subjective reports to her providers to argue she could

not perform any work because it might trigger extreme allergies, the objective medical evidence and other evidence of record do not support Plaintiff's alleged extreme symptoms. *See, e.g.,* AR 1058 (noting "examinations show[ed] unremarkable findings pertaining to relevant body systems over the longitudinal record")). The ALJ's RFC included limitations to account for Plaintiff's allergies (AR 1061, 1066), and the vocational expert testified that such limitations would not preclude performance of the jobs of Grocery Store Bagger, Automobile Detailer, and Hospital Food Service Worker (AR 1069, 1114-17, 1119). Plaintiff's alternative interpretation of the record is not sufficient to warrant remand. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### 3.    Bone Density

Plaintiff next argues the ALJ erred because her bone density reports from 2016 and 2017 were not reviewed by any of the state agency doctors. Pl.'s Mot. at 9 (citing AR 754, 855). She maintains the ALJ "either evaluated [her] bone density study himself and failed to discuss it, or he just ignored it." *Id.* In support of her argument, Plaintiff cites *Laura G. v. Berryhill*, 357 F. Supp. 3d 1023 (Cal. C.D. 2019). In that case, the court remanded for further proceedings because the ALJ assessed the plaintiff's MRIs and bone density evidence herself, without any state agency doctor having evaluated the plaintiff's osteoporosis diagnosis. *Id.* at *1032. The court noted the stage agency physicians reviewed the plaintiff's medical records in March and June 2014, but subsequent lumbar and cervical-spine MRIs in December 2014 showed degenerative changes and cord flattening. *Id.* at *1031-32. The court also noted the state agency doctors weren't aware of the plaintiff's osteoporosis, which wasn't diagnosed until 2015. *Id.* at *1032. The court found the ALJ erred because she instead evaluated the MRIs and bone-density evidence herself, determining that the MRIs showed only "slight abnormality that would have no more than a minimal effect on [Plaintiff's] ability to work" and that the osteoporosis was nonsevere." *Id.* The court held that "[m]aking these assessments without support from any physician was improper." *Id.* (citations omitted).

Here, the ALJ found Plaintiff's osteoporosis non-severe (AR 1058), but there is no

indication the ALJ evaluated any bone density evidence herself.  Instead, the record shows these studies were considered by Plaintiff's providers.  In March 2016 Hooman Dehghan, M.D. reviewed Plaintiff's bone density test results and noted her status as post-menopausal, that she had no recent fractures, and that she regularly took dietary supplements.  AR 1000.  Plaintiff was started on medication (AR 1001), which she continued to be prescribed through at least January 2018 (AR 1022).  In June 2019, Plaintiff's osteoporosis was noted as "stable" on her current medication regimen.  AR 1660.  Unlike the record in *Laura G.*, the record in this case allowed the ALJ to determine the nature and severity of Plaintiff's impairments based on objective medical evidence, without rendering her own medical opinion.  Further, although the ALJ did not specifically address the 2016 and 2017 bone density reports, there is no requirement that an ALJ discuss every piece of evidence considered.  *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ([I]n interpreting the evidence and developing the record, the ALJ does not need to "discuss every piece of evidence.") (citations omitted).

### 4.    Fibromyalgia

Next, Plaintiff argues the ALJ's RFC was improper because of his reliance on normal clinical physical examination signs, despite her diagnosed fibromyalgia.  Pl.'s Mot. at 9.  In discussing Plaintiff's fibromyalgia, the ALJ determined it was medically determinable as a severe impairment, but the severity of her fibromyalgia did not preclude functioning beyond the restrictions stated in the RFC.  AR 1059.  The ALJ noted the record documented mild to moderate discomfort with intermittent pain worsening with cold temperature, activity, and stress, that the pain improved with rest and medications, and that there was no evidence of major joint swelling.  *Id.*

"Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue."  *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (quotation marks and citation omitted).  "The Agency and the courts have determined that fibromyalgia is a real disorder that can impact a person's ability to work."  *Slaff v. Colvin*, 2015 WL 404226, at *2 (C.D. Cal. Jan. 28, 2015) (citing *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004)); SSR 12-2, 2012 WL 3104869 (July 25, 2012) ("[Fibromyalgia is a

12

1    [medically determinable impairment] when it is established by appropriate medical evidence.

2    [Fibromyalgia] can be the basis for a finding of disability."). SSR 12-2p "provides guidance on

3    how we develop evidence to establish that a person has a medically determinable impairment

4    (MDI) of fibromyalgia (FM), and how we evaluate FM in disability claims and continuing

5    disability reviews under titles II and XVI of the Social Security Act (Act)." SSR 12-2p at *1. A

6    claimant must provide evidence that a licensed physician reviewed her medical history, conducted

7    a physical examination, and made a fibromyalgia diagnosis. *Id.* at *2. The physician must also

8    provide evidence which satisfies one of two alternate diagnostic criteria: the 1990 American

9    College of Rheumatology Criteria for the Classification of Fibromyalgia or the 2010 American

10   College of Rheumatology Preliminary Diagnostic Criteria. *Id.* at *2-3. Under the 1990 criteria,

11   the evidence must show: (1) "a history of widespread pain . . . that has persisted . . . for at least 3

12   months;" (2) at least 11 positive tender points, found both bilaterally and above and below the

13   waist; and (3) evidence that other disorders which could cause the symptoms were excluded. *Id.* at

14   *3. Under the 2010 criteria, the evidence must show: (1) a history of widespread pain; (2)

15   repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions;

16   and (3) evidence that other disorders which could cause the symptoms were excluded. *Id.* Finally,

17   the physician's diagnosis must not be "inconsistent with the other evidence in the person's case

18   record." *Id.* at *2.

19        Plaintiff relies on *Benecke* in asserting that fibromyalgia must be "evaluated 'entirely on

20   the basis of patients' reports of pain and other symptoms.'" Pl.'s Mot. at 9 (quoting *Benecke*, 379

21   F.3d at 590). However, after *Benecke* was decided in 2004, the Agency published SSR 12-2p in

22   2012 to provide guidance regarding the evidence needed to establish a medically determinable

23   impairment of fibromyalgia. 2012 WL 3104869, at *2. As part of this, a physician must conduct

24   a physical examination and provide evidence that satisfies either the 1990 criteria or the 2010

25   criteria. Here, the ALJ explicitly considered both the 1990 and 2010 criteria. AR 1059.

26        The ALJ found the evidence of record showed Plaintiff had "significant problems with

27   fatigue and body tenderness and pain for a number of years, which continued as of the established

28   onset date" AR 1066. The ALJ noted Plaintiff's fibromyalgia tender points ranged between 11

United States District Court
Northern District of California

13

out of 18 points to 16 out of 18 points during physical examinations throughout the record.  AR 1062 (citing AR 743, 752).  The ALJ found Plaintiff's fibromyalgia was a "severe" medically determinable impairment.  AR 1059.  However, the ALJ emphasized that the record did not document evidence of major joint swelling and that Plaintiff persistently described her symptoms as only "mild to moderate discomfort."  AR 1059 (citing AR 741); *see also, e.g.*, AR 621, 626, 897, 926, 994, 1000, 1006, 1012.  Before July 2015, Plaintiff did not engage in any form of formal treatment for her fibromyalgia symptoms (AR 625, 741), despite her diagnosis with the condition in 2000 (AR 1003).

Further, as the ALJ observed, Plaintiff's symptoms were well controlled once she was started on medication.  AR 1062 (citing AR 741 (noting a 70% improvement in fibromyalgia symptoms while on Gabapentin)); *see also* AR 672, 744, 780.  Impairments that can be controlled effectively with medication are not disabling.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  Indeed, Plaintiff's January 2018 rheumatology evaluation provided persuasive evidence that her condition was under control.  It indicated that Plaintiff continued to be doing well after her established disability onset date—she had no significant pain, a normal physical exam, and good response to her medications, and stable management of her fibromyalgia symptoms on her prescribed protocol.  AR 1066 (citing AR 1020-22).  As the ALJ observed, Plaintiff's examinations throughout the record were "typically normal," with documented normal range of motion, full (5/5) strength in all her extremities, normal muscle bulk and tone, intact sensation, no joint swelling, and a normal gait on all her examinations.  AR 1066 (citing, *e.g.*, AR 1515, 1548, 1559, 1570); AR 1062, 1064 (citing, *e.g.*, AR 621, 626, 743, 897-98, 922-23, 928, 994-95, 1021).

In sum, the Court finds the ALJ reasonably assessed Plaintiff's RFC, taking into account all the evidence of record, including her subjective allegations, as well as the objective medical and other evidence of record related to her fibromyalgia.  The Court is aware of no authority that requires an ALJ to give dispositive weight to Plaintiff's symptom allegations simply because they were associated with fibromyalgia.  Plaintiff cites *Revels*, which recognized that "medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods,

14

as described in SSR 12-2p and [prior Ninth Circuit precedent]."  874 F.3d at 662.  But the *Revels* court did not simply accept the claimant's alleged symptoms; rather, the court analyzed the various reasons provided for discounting particular pieces of evidence and considered medical evidence of claimant's fibromyalgia in conjunction with the symptom allegations.  *Id.* at 662-63. Here, the longitudinal evidence of record, including objective medical evidence (*see, e.g.,* AR 150-51, 174-75, 197-98, 556-61, 1570), Plaintiff's ability to work as a housekeeper and apartment manager (AR 481, 1376), and her positive response to treatment protocols (AR 991, 1020-22, 1660) supported the ALJ's physical RFC assessment.  This is "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion." *Biestek*, 139 S. Ct. at 1154.  While Plaintiff offers an alternative interpretation of the record, it is based largely on her subjective complaints, which, as discussed below, the ALJ properly discounted.  Therefore, under the deferential standard of review, the Court must affirm.

## C.    Medical Opinions

Upon remand, the Appeals Council directed the ALJ to, among other things, evaluate the treating and non-treating source opinions and explain the weight given to such opinion evidence. AR 1054, 1172-73, 1177-80.  In response, the ALJ assessed the multiple conflicting mental functional opinions, which had widely divergent limitations assigned to Plaintiff—from findings of no mental limitations (AR 1060, 1065 (citing AR 162-65, 174-75, 198-200)) and "moderate" limitations (AR 1060-61, 1064 (citing AR 564-70, 663-69)), to opinions of Plaintiff having no useful ability to perform mental work activities (AR 1067 (citing AR 648, 660-61, 654-55)).  In evaluating these opinions, the ALJ did not adopt a particular opinion but instead used these opinions to inform her mental RFC findings.  AR 1061, 1066.  Plaintiff argues the ALJ erred in her evaluation of these opinions.

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  In this circuit, courts distinguish among the opinions of three types of physicians: (1) treating physicians who have an established relationship with the claimant; (2) examining physicians who see the claimant but do not treat

United States District Court
Northern District of California

15

him; and (3) non-examining physicians who neither examine nor treat the claimant.[8]  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The opinion of a treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-examining physician.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).  If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it must be given controlling weight.  20 C.F.R. § 404.1527(c)(2).  The ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting the uncontradicted opinion of a treating physician.  *See Ghanim*, 763 F.3d at 1160.  Where contradicted, the opinion of a treating physician may only be rejected for "specific and legitimate reasons that are supported by substantial evidence."  *Id.*

Under the "specific and legitimate reasons" standard, the ALJ is required to set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Thomas*, 278 F.3d at 957.  Conclusory statements by the ALJ are insufficient; he "must set forth [his or] her own interpretations and explain why they, rather than the doctors', are correct."  Id.  An ALJ errs if he "does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another[.]"  *Garrison*, 759 F.3d at 1012–13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

### 1.      Consultative Examiner Kara Cross, Ph.D.

On August 22, 2014, Kara Cross, Ph.D. performed a psychological consultative examination.  AR 564-70.  At her examination, Plaintiff was alert and oriented, had coherent and organized thoughts, thought content was relevant and not delusional, had appropriate affect, normal and articulate speech, adequate memory, adequate fund of knowledge, adequate concentration, and normal judgment, reasoning, and insight.  AR 567-68.  Dr. Cross described Plaintiff as "clean and casually groomed," with the ability to volunteer information spontaneously,

---

[8] For benefits applications filed after March 27, 2017, the Social Security Administration's regulations and several Social Security Rulings regarding the evaluation of medical evidence have been amended.  As Plaintiff filed her application in 2015, the prior rules govern the Court's analysis here.

poor eye contact, adequate rapport and attention, and without psychomotor agitations or

retardation, throughout the examination.  AR 567.  Plaintiff was "open, cooperative and friendly."

*Id.*  Dr. Cross opined that Plaintiff had a "moderate" ability to relate to co-workers and the public

in an appropriate manner, and no other mental functional limitation.  AR 570.  She assessed

Plaintiff with a GAF[9] rating of 60, indicative of "moderate" symptoms.  AR 569.

On November 29, 2015, Plaintiff attended another consultative examination with Dr.

Cross.  AR 663-69.  She was noted as alert and oriented, having relevant and not delusional

thought content, normal and articulate speech, adequate memory, adequate fund of knowledge,

adequate concentration, and normal judgment, reasoning, and insight.  AR 667.  She was "neatly

and casually groomed," respectful and open, with adequate eye contact.  AR 666.  Plaintiff was

also described as being a "somewhat" adequate and reliable historian (AR 663) and appearing

"somewhat genuine and truthful," with "evidence of exaggeration" and "somewhat valid"

responses (AR 666).  Plaintiff was further noted as slow to process thoughts due to depression, but

without tangentiality or loosening of associations.  *Id.*

Plaintiff reported being in mental health treatment, and that her medications were helping.

AR 664.  However, Dr. Cross noted that "[n]o documents were available to review" and her

assessment was made based entirely on Plaintiff examination and her subjective statements.  AR

663, 665-66.  Dr. Cross opined that Plaintiff had no mental functional limitations while working

part-time (AR 668-69), which was consistent with Plaintiff's report that she had been successfully

working on a part-time basis during the 12 months preceding the examination (AR 665; *see also*

AR 409, 481), and with Dr. Cross's assessment of a 63 GAF score (AR 668)—indicative of no

more than "mild" symptoms.  Dr. Cross also opined that Plaintiff would have moderate difficulty

carry out simple one or two-step job instructions, performing detailed and complex tasks, and

_____

[9] A Global Assessment of Functioning ("GAF") score is a numerical summary of a clinician's
judgment of an individual's psychological, social, and occupational functioning on a hypothetical
continuum of mental health on a scale of one hundred.  *See* Diagnostic and Statistical Manual of
Mental Disorders, 32-34 (4th ed. text rev. 2000).  A GAF score of 51-60 represents moderate
symptoms or any moderate difficulty in social, occupational, or school functioning.  A GAF score
of 61-70 represents some mild symptoms or some difficulty in social, occupational, or school
functioning.

United States District Court
Northern District of California

1    maintaining regular attendance over the course of an 8-hour workday, during a 40-hour work

2    week, without emotionally decompensating.  AR 668-69.

3          The ALJ accorded less weight to Dr. Cross's earlier 2014 opinion in light of her later

4    examination finding greater limitations.  AR 1064.  As to Dr. Cross's November 2015 opinion, the

5    ALJ found the assessment of no more than a "moderate" limitation in any area of functioning

6    supported by the doctor's examination notes.  AR 1064.  The ALJ also found this assessment was

7    consistent with the objective medical evidence of record related to the period before January 1,

8    2018.  AR 1064.  Specifically, the ALJ observed that upon mental status or psychiatric

9    examination, Plaintiff typically was oriented, had normal speech, memory, attention, fund of

10   knowledge, fair judgment, normal associations, and reported no hallucinations, delusions, or

11   suicidal, or homicidal ideation.  AR 1064 (citing, *e.g.*, AR 621, 626, 640, 692-93, 703-04).

12   However, "[t]o the extent that Dr. Cross implied [Plaintiff] could not sustain a regular forty-hour

13   week or equivalent schedule," the ALJ accorded this portion of the opinion "little weight."  *Id.*

14   The ALJ reasoned this portion of the opinion was not supported by the doctor's examination

15   notes, did not state "the most" Plaintiff could do, and amounted to an opinion on an issue reserved

16   to the Commissioner.  *Id.*

17         Plaintiff argues the ALJ failed to address Dr. Cross's opinion that she had a moderate

18   limitation in the ability to understand, remember, carryout simple one or two step instructions over

19   an eight-hour period for full time work.  Pl.'s Mot. at 12.  However, as noted above, the ALJ

20   reasoned that this portion of the opinion was not supported by the doctor's examination notes, did

21   not state "the most" Plaintiff could do, and amounted to an opinion on an issue reserved to the

22   Commissioner.  AR 1064; *see* 20 C.F.R. §§ 404.1545 (describing a functional assessment as "the

23   most" an individual can still do despite limitations, rather than an assessment of what one is

24   incapable of doing); 404.1527(d) (A statement by a medical source that you are 'disabled' or

25   'unable to work' does not mean that we will determine that you are disabled.").  In weighing a

26   medical opinion, an ALJ need not necessarily agree with everything contained in that opinion and

27   can consider some portions less significant than others when evaluated against the other evidence

28   of record.  *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Brown-Hunter*, 806 F.3d at

United States District Court
Northern District of California

1   492 (An ALJ's decision need not be drafted with "ideal clarity," but must, at a minimum, set forth

2   the ALJ's reasoning "in a way that allows for meaningful review.") (citing *Treichler v. Comm'r of*

3   *Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).  As such, the Court finds the ALJ

4   appropriately addressed the limitations opined by Dr. Cross.

5        Plaintiff also argues that Dr. Cross's November 2015 opinion stands for the proposition

6   that she was "not capable of dealing with the stress of full-time work without emotionally

7   decompensating."  Pl.'s Mot. at 12.  This is a misstatement of the opinion, as Dr. Cross opined that

8   Plaintiff had no more than a "moderate" limitation in any area of functioning, which under the

9   regulations translates to a "fair" ability to function "independently, appropriately, effectively, and

10  on a sustained basis," in a given area of mental functioning.  20 C.F.R., Part 404, Subpt. P, App. 1,

11  section 12.00 (F)(2)(c).  As the ALJ noted, Dr. Cross assessed Plaintiff with no "marked"

12  limitation, let alone "extreme" limitation as Plaintiff appears to suggest, in any area of mental

13  functioning.  AR 1064.

14       As the ALJ's analysis of Dr. Cross's opinion is supported by the record, the Court must

15  affirm.

16       **2.    Treating Providers Joan Cartwright, Ph.D., David Hersh, M.D., and Nurse
17            Practitioner Pam Grimes**

18       On October 16, 2015, Joan Cartwright, Ph.D., opined that Plaintiff could not adequately

19  compete in the open job market, due to inconsistency of her overall functioning.  AR 648.  On

20  November 11, 2015, Dr. Cartwright completed a short form evaluation for mental disorders.  AR

21  657.  Dr. Cartwright performed a mental status examination, finding grooming fair but motor

22  activity agitated, noting rapid speech, and that Plaintiff was cooperative but could be evasive.  *Id.*

23  Dr. Cartwright found Plaintiff oriented in all areas, but her concentration was slightly distracted,

24  she had difficulty with memory, and she had to constantly record her activities.  AR 658.

25  Plaintiff's mood was anxious, depressed, and fearful, she did not appear to have hallucinations,

26  and she had a tangential thought process, no delusions, and some suicidal ideations.  AR 657-58.

27  Dr. Cartwright opined that Plaintiff had fair to poor ability to perform the mental requirements of

28  work.  AR 660.

United States District Court
Northern District of California

1          On November 13, 2015, Psychiatric Nurse Pam Grimes completed a short form evaluation

2   for mental disorders, which was reviewed by David Hersh, M.D.  AR 651-55.  Grimes noted

3   Plaintiff's symptoms of hyperactivity, marginal grooming, rapid and pressured speech with

4   rumination, and tangential thinking.  AR 651.  She noted Plaintiff had obsessions with her present

5   issues and paranoid of agencies knowing her whereabouts.  AR 652.  Nurse Grimes also noted

6   Plaintiff could be extremely disorganized in her thoughts and executive functioning, and that she

7   is easily overwhelmed.  AR 651.  She noted Plaintiff was compliant with treatment and had shown

8   improvements, however, her residual symptoms may be permanent.  AR 653.  Nurse Grimes

9   opined that Plaintiff would be unable to function at an employment level and assessed Plaintiff

10  with fair-poor mental limitations in all areas of mental functioning.  AR 654

11          In considering these opinions, the ALJ noted the "the treatment sources do not opine as to

12  a date at which time such limitations were attained and a review of the treatment records do not

13  support the degree of limitation opined as of the date of the opinions, until the established onset

14  date."  AR 1067.  However, the ALJ assigned their opinions "great weight" as of the established

15  onset date.  *Id.*

16          Plaintiff argues the ALJ's analysis was "disingenuous" because the ALJ noted the opinions

17  failed to "opine as to a date at which time such limitations were attained" by Plaintiff, yet in

18  making her decision, the ALJ considered the providers' treatment notes from around the same

19  time period.  Pl.'s Mot. at 15 (citing AR 1067).  In light of Plaintiff's April 2012 alleged disability

20  onset date (AR 314, 318), which pre-dated these opinions by more than two years, the ALJ's

21  observations were relevant.  The ALJ noted that at her October 2015 examination with Nurse

22  Grimes, Plaintiff was oriented; had normal speech, memory, attention, fund of knowledge, fair

23  judgment, normal associations; and reported no hallucinations, delusions, or suicidal, or homicidal

24  ideation.  AR 1063 (citing AR 692-93).  By December 2015, Nurse Grimes noted Plaintiff's mood

25  had been "remarkably stabilized" on her medication and Plaintiff's mental status examination was

26  "normal" in all respects.  AR 1063 (citing AR 702-03); *see also* AR 699.  Similarly, Dr.

27  Cartwright's 2015 notes stated Plaintiff was not gravely disabled, and that she had made

28  "excellent progress," but needed "additional sessions to consolidate progress and prevent any

United States District Court
Northern District of California

United States District Court
Northern District of California

1    backsliding." AR 1067 (citing AR 683-84); *see also* AR 686-87). Plaintiff points to treatment

2    notes and GAF assessments made by a different provider in 2017 as support for these 2015

3    opinions. Pl.'s Mot. at 15-16. However, as the ALJ correctly noted, the contemporaneous

4    treatment notes, including Dr. Cross's and Dr. Cartwright's assessed GAF scores, were

5    inconsistent with the extreme limitations opined. *See, e.g.*, AR 668. 692-93, 699, 702-03, 683-84,

6    1063, 1067. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ properly rejected

7    treating physician's opinion where "treatment notes provide[d] no basis for the functional

8    restrictions [physician] opined should be imposed on [claimant]").

9         In sum, because the ALJ's findings were reasonable and well supported, the Court must

10   affirm.

11   **D.    Subjective Limitations**

12        Plaintiff next argues the ALJ failed to provide clear and convincing reasons to reject her

13   subjective limitations. Pl.'s Mot. at 19-20.

14        **1.    Legal Standard**

15        "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

16   must engage in a two-step analysis. 'First, the ALJ must determine whether the claimant has

17   presented objective medical evidence of an underlying impairment which could reasonably be

18   expected to produce the pain or other symptoms alleged.'" *Vasquez v. Astrue*, 572 F.3d 586, 591

19   (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). And

20   second, "if the claimant meets the first test and there is no evidence of malingering, the ALJ can

21   only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear

22   and convincing reasons' for the rejection." *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Chater*,

23   80 F.3d 1273, 1282 (9th Cir. 1996)). "At the same time, the ALJ is not required to believe every

24   allegation of [symptoms], or else disability benefits would be available for the asking, a result

25   plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (citation and internal

26   quotations omitted). Along the same lines, "an individual's statements of symptoms alone are not

27   enough to establish the existence of a physical or mental impairment or disability." SSR 16-3P,

28   2016 WL 1119029, at *2.

In determining whether an individual's symptoms will reduce her capacities to perform work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1112 (citations and internal quotation marks omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3p, 2016 WL 1119029, at *7.

### 2.    Analysis

The ALJ provided several reasons for finding Plaintiff's allegations inconsistent with the record, including Plaintiff's: (1) objective medical evidence, with mostly normal clinical signs; (2) positive response to her generally conservative treatment history; and (3) extensive activities of daily living.  AR 1062-63.

### a.    Medical Evidence

First, the ALJ found that Plaintiff's symptom allegations, prior to January 1, 2018, were inconsistent with the objective medical evidence.  AR 1062-63; *see* 20 C.F.R. § 404.1502(f) (defining objective medical evidence as "signs, laboratory findings, or both").  This was a reasonable consideration in assessing the intensity, persistence, or functionally limiting effects Plaintiff's symptoms.  *See* 20 C.F.R. § 404.1529(c)(2) (including objective medical evidence among the considerations when assessing a claimant's symptoms); SSR 16-3p, 2016 WL 1119029 ("[O]bjective evidence is a useful indicator" of symptom intensity and persistence).  The ALJ noted Plaintiff's typically "unremarkable" physical and mental clinical signs  AR 1062-63; *see* 20 C.F.R. § 404.1502(g).[10]  Upon physical examination, Plaintiff's fibromyalgia tender points, when

---

[10] "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms).  Signs must be shown by medically acceptable

22

measured, ranged between 11 out of 18 points and 16 out of 18 points, but Plaintiff persistently retained her normal range of motion, full ("5/5") strength in all her extremities, normal muscle bulk and tone, intact sensation, no joint swelling, and the ability to ambulate unassisted with a normal gait. AR 1062 (citing AR 621, 626, 743, 752, 898, 922, 928, 994-95, 1021); AR 1063 (citing AR 557-59). Similarly, upon mental status or psychiatric examination, Plaintiff's mood was intermittently sad, depressed, or anxious, but she was persistently oriented, with normal speech, memory, attention, fund of knowledge, fair judgment, normal associations, and without reported hallucinations, delusions, or suicidal, or homicidal ideation. AR 1063 (citing AR 621, 626, 640, 692-93, 702-03); AR 1063 (citing AR 567-68). Based on this objective medical evidence, the ALJ reasonably found Plaintiff's clinical signs inconsistent with her allegations of extreme and persistent symptoms causing her work-preclusive limitations. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (reasoning the lack of muscular atrophy or any other physical signs of inactivity is inconsistent with allegations of being a "totally incapacitated individual"); *Molina*, 674 F.3d at 1113 (finding it appropriate for ALJ to rely on objective clinical findings, including generally normal mental status examination findings, to find a claimant's allegations of disabling mental limitations unsupported).

### b.  Treatment History

Next, the ALJ considered Plaintiff's treatment history. AR 1062-63; *see* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v) (listing treatments among the factors considered in subjective symptom analysis). The ALJ found "the longitudinal record reflect[ed] a conservative course of treatment, which [did] not support the degree of intensity, persistence, or limitation alleged." AR 1063. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Plaintiff reported trying "natural paths" to self-treat her physical conditions "for many years," until she was prescribed physical therapy and

---

clinical diagnostic techniques.  Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated."

medications.  AR 1063 (citing AR 741, 891).  Once on medications, Plaintiff reported a "70% improvement" in her symptoms, that she was "doing well with no significant pain" and had "no current major joint pain or swelling."  *Id.* (citing AR 741); *see also* AR 672, 780, 921.  At times, Plaintiff also reported taking only over the counter medication or no medication at all.  AR 1063; AR 375, 399 (listing only "Benadryl" on current medication forms); AR 556, 976 ("not taking any medication now"); AR 1109 (testifying in August 2020 that she was taking no pain medication "at this point").  Similarly, Plaintiff reported engaging in no mental health treatment prior to April 2015, when she started attending therapy.  AR 565, 634.  She started psychotropic medication four months later.  AR 635.  While on medication and in therapy, Plaintiff was noted as "remarking less and less about her multiple somatic complaints" and being "[m]ore organized" and having a "more even" mood with "improved executive functioning.  AR 643, 646, 699, 702, 770, 981, 1942.  The ALJ appropriately considered Plaintiff's responsiveness to treatment in discounting her allegations.  20 C.F.R. § 404.1529(c)(3); *Mead v. Astrue*, 330 F. App'x 646, 648 (9th Cir. 2009) (ALJ properly discounted claimant's self-reports where treatment notes indicated that her depression had improved, she responded well to treatment, and she could perform activities of daily living) (citing *Thomas*, 278 F.3d at 958-59).  Additionally, the record is devoid of psychiatric hospitalizations or specialized inpatient psychiatric care, even during periods of medication absence or noncompliance.  AR 1063 (citing AR 565, 646, 664, 694, 702).

### c.  Activities of Daily Living

The ALJ also considered Plaintiff's subjective statements, finding them inconsistent with her reported activities of daily living.  AR 1063; *see* 20 C.F.R. § 404.1529(c)(3) (in addition to considering objective medical evidence, ALJ considers whether and to what extent the claimant's subjective statements are consistent with other evidence in the record).  The ALJ observed that Plaintiff's daily activities suggested she could perform the range of simple, medium exertional work assessed in her RFC.  AR 1063.  For example, Plaintiff reported the ability to perform her own grooming, prepare meals, read, use a computer, walk, run errands, go shopping, go to the movies, go out to eat, call friends, pay bills, go out alone, complete household tasks, and make decisions.  AR 1063 (citing AR 566-67, 655-66).  Prior to January 1, 2018, Plaintiff also reported

United States District Court
Northern District of California

the ability to live alone (AR 666, 1090), work 20-25 hours a week as an apartment manager (AR 49), deal with tenant complaints and issues (AR 64), and walk a mile, ride a bicycle, and use public transportation (AR 420, 431, 433, 663).  As the ALJ noted, "such activities are not determinative of the ability to work," but rather "provide insight into [Plaintiff's] functioning and suggest a greater degree of function than alleged."  AR 1063.

It is well-established Ninth Circuit precedent that an ALJ may consider a claimant's activities insofar as those activities are not consistent with her allegations.  *See Molina*, 674 F.3d at 1113 ("Even when everyday activities suggest some difficulty functioning, they may be grounds for discrediting [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment."); *Valentine v. Astrue*, 574 F.3d 685, 693 (9th Cir. 2009) (while evidence did not suggest claimant could work, it "suggest[ed] that [his] later claims about the severity of his limitations were exaggerated").  In other words, the issue before the ALJ was not whether Plaintiff's activities evince actual vocational ability, but rather whether they suggest greater functional ability than she has alleged.  Thus, the ALJ properly considered whether Plaintiff engaged in daily activities inconsistent with her alleged symptoms.  *See Molina*, 674 F.3d at 1113.

Plaintiff contends that because these were "admitted" or "reported" activities, they cannot be viewed as contradictory to her symptom allegations.  Pl.'s Mot. at 21.  However, the basis of Plaintiff's application for benefits is that she was completely disabled, and her activities indicating otherwise are a germane consideration.  For example, Plaintiff's allegation that she was wholly incapable of being exposed to any chemicals (*id.* at 8; *see, e.g.*, AR 53-54), was inconsistent with her admission that she worked for 16 months as a housekeeper (AR 409, 439, 444, 481, 1376).  Similarly, Plaintiff's allegation that she could only pay attention "a few minutes at a time" (AR 433) was inconsistent with her admission that she could drive a motor vehicle, unaccompanied, over extended distances (AR 63, 1106).  That Plaintiff admitted or reported these contradictory activities does not make her alleged symptom allegations conform to her actual activities.  The ALJ reasonably found that Plaintiff's documented activities were inconsistent with her allegations of extreme and persistent symptoms causing her work-preclusive limitations, prior to January 1, 2018.

### 3.    Conclusion

In sum, the Court finds the ALJ properly considered the inconsistencies of record in discounting Plaintiff's allegations of disabling symptoms.  *See, e.g., Yacoobali v. Saul*, 2020 WL 1322971, at *5-6 (N.D. Cal. Mar. 20, 2020) (ALJ appropriately discounted symptom testimony where claimant's mental status examinations often revealed normal findings, the claimant could travel, drive, and attend school, and his symptoms improved with treatment) (citing *Tommasetti*, 533 F.3d at 1040).  Because the ALJ's findings were reasonable and well supported, the Court must affirm.

### E.    Step Five

At step five, the ALJ had to determine whether Plaintiff could successfully transition to other work.  That required exploring two issues.  First, the ALJ needed to identify the types of jobs Plaintiff could perform notwithstanding her disabilities.  *See* 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1).  Second, the ALJ needed to ascertain whether those kinds of jobs "exist in significant numbers in the national economy."  *Id.* (both); *see id.* §§ 404.1566, 416.966.  For guidance on such questions, ALJs often seek the views of vocational experts.  *See id.* §§ 404.1566(e), 416.966(e).  As the Supreme Court has recognized, a vocational expert is a "professional," contracted to provide "impartial testimony," who "must have expertise and current knowledge" of the "conditions and physical demands" associated with various jobs, as well as "[i]nvolvement in or knowledge of placing adult workers[ ] with disabilities[ ] into jobs."  *Biestek*, 139 S. Ct. at 1152 (simplified).  An ALJ's reliance on qualified, cogent, and uncontradicted expert testimony generally constitutes substantial evidence in support of an ALJ's finding.  *See Ford*, 950 F.3d at 1159.

As noted above, the ALJ determined that, prior to January 1, 2018, Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) consisting of the ability to lift, carry, push or pull up to 50 pounds occasionally and 25 pounds frequently; stand and walk 6 out of 8 hours a day; sit 6 out of 8 hours a day; frequently climb ramps, stairs, stoop, kneel, crouch, and crawl; frequently handle and finger with the upper extremities; tolerate no more than occasional exposure to gases, fumes, odors, dusts, poor ventilation, or chemicals; do work that excludes climbing ladders, ropes, and scaffolds, more than occasional exposure to extreme cold and vibrations, exposure to

1
2

> dangerous moving machinery or unprotected heights. The claimant can perform simple work tasks involving occasional and superficial contact with coworkers and public, and do no assembly line or production paced work.

3    AR 1061.  The ALJ included these limitations in a hypothetical posed to the vocational expert,

4    who testified that a hypothetical individual of Plaintiff's age, educational level, and vocational

5    profile, with the assessed limitations, could perform the jobs of a Grocery Store Bagger (DOT

6    code 920.687-014), Automobile Detailer (DOT code 915.687-034), and Hospital Food Service

7    Worker (DOT code 319.677-014), and that those jobs existed in significant numbers in the

8    national economy.  AR 1069, 1113-17.

9         Plaintiff argues the ALJ failed to consider the expert's additional testimony.  Specifically,

10   on cross examination, her attorney asked if these occupations involved any sitting, to which the

11   vocational expert responded "oh, my goodness, no. No. On . . . your feet all day."  AR 1118.  On

12   follow-up regarding the Auto Detailer occupation, the vocational expert testified that a vast

13   majority of the day except for a few minutes here and there the detailer would be on their feet.  AR

14   1120.  The vocational expert testified the same for the Bagger and the Hospital Food Worker.  AR

15   1121.  Plaintiff argues the ALJ's failure to discuss this testimony constitutes legal error since the

16   ALJ found she could only stand and walk for up to six hours in a workday, and she therefore does

17   not possess the physical ability to perform the occupations identified by the vocational expert.

18   Pl.'s Mot. at 18-19.  The Court agrees.

19        The ALJ based her decision on the testimony of the vocational expert.  AR 1070 ("Based

20   on the testimony of the vocational expert, prior to the established onset date of disability,

21   considering the claimant's age, education, work experience, and residual functional capacity, the

22   claimant was capable of making a successful adjustment to other work that existed in significant

23   numbers in the national economy.").  However, the ALJ did not follow up with the expert

24   regarding his testimony on cross-examination.  While the expert first acknowledges the ALJ's

25   standing limitation and testified that it would not preclude performance of the listed jobs (AR

26   1113-17), he then appears to concede that all three positions require employees to be on their feet

27   "all day":

28        Q Okay. Does that job [(Grocery Store Bagger)] involve any sitting?

United States District Court
Northern District of California

1

A Sitting? Oh, my goodness, no. No. On --

2

Q Okay.

3

A -- your feet all day.

4

* * *

5

6

Q . . . And so the only -- would the only sitting in that job [(Automobile Detailer]) be when they're in the car?

7

A And that's -- yeah. And that's, like a few minutes here and there. The vast majority of the day, the automobile detailer is on their feet.

8

9

Q All right. Same thing with the hospital food service worker?

10

A Yeah. Extensive being on their feet. Sitting, very minimal.

11

AR 1118, 1120-21.

12

Defendant does not address this testimony directly, instead arguing the only circumstance

13

under which a vocational expert's testimony may not, on its own, constitute substantial evidence is

14

when there is an apparent conflict with the DOT.  Def.'s Mot. at 24-25.  It is true that, under

15

Social Security Ruling 00-04p, an ALJ must resolve any conflicts between vocational expert

16

testimony and information in the DOT, *see* SSR 00-04p, 2000 WL 1898704, and that "[a] conflict

17

must exist between the expert's testimony and the DOT in order to trigger the ALJ's responsibility

18

to resolve the conflict," *Dewey v. Colvin*, 650 F. App'x 512, 514 (9th Cir. 2016).  However, in this

19

case, the vocational expert's testimony appears to be self-contradictory, and neither he nor the ALJ

20

made any effort to resolve this conflict.  In such circumstances, the ALJ may not rely on the

21

vocational expert's testimony to find that Plaintiff could perform the listed positions.  *See*

22

*Hamilton v. Comm'r of Soc. Sec. Admin.*, 464 F. App'x 681, 682 (9th Cir. 2012) ("Substantial

23

evidence does not support a finding of disability where the VE's testimony either is contradictory

24

or responds to an inaccurate hypothetical."); *Lucy v. Saul*, 2020 WL 1318803, at *10 (W.D. Tenn.

25

Mar. 20, 2020) (ALJ commits reversible error where she "relie[s] on [a] vocational expert's initial,

26

confident testimony about the jobs the claimant could perform without recognizing the expert's

27

conclusions collapsed on cross examination."); *Reed v. Comm'r of Soc. Sec.*, 2021 WL 928401, at

28

*3-5 (S.D. Ohio Mar. 11, 2021) (vacating a decision by the ALJ because it relied on a vocational

expert's testimony that the claimant "would be able to perform the requirements of specific occupations such as housekeeping cleaner, folder, and inspector" but on cross-examination the "[claimant's] ability to perform these jobs was brought into question by the vocational expert's own testimony").

Where a vocational expert's testimony appears to be self-contradictory, remand is appropriate.  *See Hamilton*, 464 F. App'x at 682 (remanding when light-work positions described by vocational expert could not accommodate claimant's at-will sit/stand limitation "according to the VE's own testimony"); *Hernandez v. Colvin*, 2014 WL 1800408, at *5 (C.D. Cal. May 6, 2014) (remanding where vocational expert presented conflicting testimony, first stating that an individual capable of only six hours of standing could perform claimant's past relevant work, then conceding that those positions as typically performed required standing throughout an eight-hour day except for the 50 minutes allotted for lunch and breaks); *Garcia v. Colvin*, 2015 WL 2384172, at *13 (S.D. Cal. May 18, 2015) (remand appropriate where ALJ failed to resolve seemingly contradictory testimony by vocational expert); *Williams v. Soc. Sec. Admin.*, 357 F. App'x 741, 742 (9th Cir. 2009) (remanding because vocational expert provided conflicting testimony as to whether doctor's report required a finding of disability at step five).

Accordingly, the Court remands on this issue.

## F.      Remedy

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits under the credit-as-true doctrine.  "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler*, 775 F.3d at 1099).  However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met.  First, the Court asks, "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"  *Id.* (quoting *Garrison*, 759 F.3d at 1020).  Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would

1    be useful." *Id.* (citations and internal quotation marks omitted).  Third, the Court then "credit[s]

2    the discredited testimony as true for the purpose of determining whether, on the record taken as a

3    whole, there is no doubt as to disability."  *Id.* (citing *Treichler*, 775 F.3d at 1101).

4           It is only "rare circumstances that result in a direct award of benefits" and "only when the

5    record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the

6    record supported the reasons provided by the ALJ for denial of benefits."  *Id.* at 1047.  Further,

7    even when all three criteria are met, whether to make a direct award of benefits or remand for

8    further proceedings is within the district court's discretion.  *Id.* at 1045 (citing *Treichler*, 775 F.3d

9    at 1101).  While all three credit-as-true factors may be met, the record as a whole could still leave

10   doubts as to whether the claimant is actually disabled.  *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th

11   Cir. 2017) n.11.  In such instances, remand for further development of the record is warranted.  *Id.*

12          Here, the ALJ failed to fully and fairly develop the record with regard to conflicts in the

13   vocational expert's testimony, but it is not clear that the ALJ would be required to find Plaintiff

14   disabled once those conflicts are resolved.  Accordingly, remand for further proceedings is

15   appropriate.

16                                    **VI.   CONCLUSION**

17          For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES**

18   Defendant's cross-motion, and **REVERSES** the ALJ's decision.  This matter is **REMANDED** for

19   further proceedings to (1) resolve the vocational expert's self-contradictory testimony, and (2)

20   determine whether clarification of the expert's testimony impacts the pre-2018 disability

21   determination in any way.  The Court shall enter a separate judgment, after which the Clerk of

22   Court shall terminate the case.

23          **IT IS SO ORDERED.**

24

25   Dated: January 10, 2022

26

27                                              THOMAS S. HIXSON
                                                United States Magistrate Judge
28